# EXHIBIT 4

# PROJECT LOAN AGREEMENT
# (RETAIL)

THIS AGREEMENT (this "**Agreement**"), dated as of August 20, 2008 between **BANCO POPULAR NORTH AMERICA** having an address at 120 Broadway, 16th Floor, New York, New York 10271 ("**Lender**") and **RIVERROCK NEHEMIAH REALTY LLC**, a New York limited liability company, having an address at 771 Thomas S. Boyland Street, Brooklyn, New York 11212 ("**Borrower**").

## PRELIMINARY STATEMENT

Borrower is the owner of certain real property situated in the County of Kings, State of New York, and more particularly described in Schedule A to the mortgages described below, together with all structures and improvements now or hereafter located thereon (the "**Premises**"). Borrower has applied to Lender for a loan to be secured by a project loan mortgage, assignment of leases and rents and security agreement covering Borrower's interest in the Premises, and Lender is willing to make said loan upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** in consideration of the mutual promises and agreement herein contained, Lender and Borrower agree as follows:

   1. Definitions.

All capitalized terms and phrases used in this Agreement but not defined in this Agreement shall have the meanings ascribed thereto in the BLA (hereinafter defined).

   2. Loan.

On the basis of the representations, warranties and covenants made by Borrower herein and in the Project Mortgage (hereinafter defined) to and subject to satisfaction of the conditions herein set forth, Lender agrees to make, and Borrower agrees to accept, a loan of up to the amount of $349,669 (the "**Loan**") to be evidenced by Borrower's project loan note (the "**Project Note**") to Lender in that aggregate amount and secured by that certain project loan mortgage, assignment of leases and rents, and security agreement (the "**Project Mortgage**") from Borrower to Lender on the Premises. The Loan shall mature, bear interest, be payable as to principal and interest and be subject to prepayment as provided in the Project Note. All Loan payments due hereunder and under the Project Note and the Project Mortgage shall be made by Borrower in lawful money of the United States of America in immediately available funds. The Loan shall be advanced from time to time as provided herein for the payment of costs in connection with the acquisition of the Premises, transfer taxes, application fees, toxic waste reports, warranties, title premiums, management fees, marketing and advertising expenses, permits and fees and other approved costs incurred by Borrower in connection with the "Improvements", as that term is defined in that certain building loan agreement between Borrower and Lender dated the date hereof (the "**BLA**") which costs are not "costs of the

improvement" under the Lien Law of the State of New York and interest on the Note (all of such costs being hereinafter collectively called "**Costs**").

3. Loan Advances.

(a) Advances will be made in respect of the categories of costs and expenses (each of which shall be Costs) set forth in a statement (the "**Project Cost Statement**") in a form approved by Lender, which statement sets forth, by category, the loan budget amounts in respect of all Costs. Advances in the aggregate shall not exceed the maximum amount set forth with respect to each such category in the Project Cost Statement as may be amended pursuant to paragraph 3(f) herein;

(b) The proceeds of the Loan shall be advanced only if the conditions set forth in paragraph 5 continue to be satisfied and no advance shall be made more frequently than hereof once a month in amounts which, at the election of Lender shall be 100% of Costs actually incurred or to be incurred as to Costs with respect to the items listed in the Project Cost Statement, in each case as evidenced by receipted bills for work performed or other evidence satisfactory to Lender, in its sole discretion;

(c) Advances shall be made by Lender, at Lender's principal office or at such other place as Lender may designate, periodically upon not less than ten (10) Business Days prior written notice to Lender;

(d) Each request for an advance shall be in form and substance reasonably satisfactory to Lender and shall be accompanied by (i) a certificate of Borrower, signed by an officer of the managing member of the Borrower, to the effect that Borrower has paid or actually incurred costs in the amount of the requested advance, that such Costs have not been made the basis for any other request for an advance of Loan proceeds under this Agreement or any other agreement between Borrower and Lender, that all representations and warranties of Borrower herein are true as of the time of such request, and that no material adverse change in Borrower's financial condition has occurred since the immediately preceding advance, (ii) a Requisition under the BLA and (iii) a notice of title continuation or an endorsement to the title policy referred to in paragraph 5 below indicating that, since the date of the last preceding advance, there has been no change in the state of title not approved by Lender and no survey exception not theretofore approved by Lender, which endorsement shall have the effect of increasing the coverage of the policy by the amount of the advance then being made. Borrower shall only be entitled to payment in the amount and for such items as are approved by Lender as set forth in the Project Cost Statement in respect of each request for advance;

(e) If at the time of an advance there are incurred Costs which shall be paid by Borrower from such advance or any prior advance and have not been paid by Borrower then, prior to and as a condition to the next advance, Borrower shall submit to Lender proof satisfactory to Lender that such incurred Costs have been paid in full;

(f) If at any time the undisbursed balance of the Loan for any category of Cost shown on the Project Cost Statement is, in Lender's judgment, excessive, the excess may be reallocated by Borrower to any other Cost approved by Lender, except that in no event shall the interest category be reduced;

-2-

(g) Lender shall be entitled, but not obligated, and is hereby irrevocably authorized to advance directly to itself such sums as are necessary to pay accrued and unpaid interest on the Note, to the extent the same is due and payable; and

(h) Lender shall not be obligated to make any advance hereunder unless all conditions to the making of an advance under the BLA have been and continue to be satisfied.

4. <u>Covenants of Borrower.</u>

Borrower hereby covenants and agrees with Lender that Borrower will (a) pay promptly when due all claims for labor and materials and prevent the filing of liens therefor against the Premises, provided that Borrower need not pay such claims so long as the validity thereof is being contested in good faith and provision for the payment thereof is made by Borrower by bonding or other method satisfactory to Lender, or otherwise in form and manner reasonably satisfactory to Lender, (b) use the Loan proceeds solely for the payment of costs and expenses which constitute Costs, (c) permit the duly authorized agents of Lender at any reasonable time to enter upon and inspect the Premises and the Improvements for purposes of assisting Lender in determining whether or not any particular advance of Loan proceeds should be made or otherwise, (d) comply with all laws, ordinances or other governmental regulations affecting the Premises or the construction of the Improvements, and (e) furnish to Lender such financial information of Borrower or the Guarantor as Lender may from time to time require as set forth in the BLA.

5. <u>Conditions Precedent.</u>

Lender's obligations under this Agreement shall be conditioned upon, and no portion of the Loan shall be advanced until, the satisfaction of the following conditions:

(i) There shall be no default beyond applicable periods of notice and grace under this Agreement, the Project Note, the Project Mortgage, or the BLA, or any other Loan Document; and

(ii) Lender shall have received: (a) executed originals of each of the Loan Documents which must be satisfactory to Lender in all respects, (b) insurance policies or certificates of insurers evidencing the insurance required by the Project Mortgage, (c) a paid title insurance policy in ALTA 2006 form, as required by the BLA, or such other form reasonably acceptable to Lender, in the amount of the Project Note, insuring the Project Mortgage to be a valid lien on the Premises free and clear of all defects and encumbrances not previously approved by Lender or its counsel, which shall contain no survey exceptions other than those previously approved by Lender, full coverage against mechanics' and materialmen's liens, an undertaking by the issuer thereof to provide the notice of title continuation or endorsement referred to in paragraph 3(d) above and a pending disbursements clause in the form of Exhibit D to the BLA, (d) an opinion of counsel for Borrower and the Guarantor in form and substance satisfactory to Lender, (e) the Project Cost Statement, (f) all conditions to receiving an advance under the BLA have been met and (g) such other documents, instruments, opinions or assurances as Lender or its counsel may request.

-3-

6. Insufficient Loan Funds.

If at any time Lender notifies Borrower that, in Lender's sole judgment, the undisbursed balance of the Loan is insufficient to pay the remaining Costs, Borrower shall either (i) deposit with Lender an amount equal to such deficiency which Lender may from time to time apply, or allow Borrower to apply, to such Costs or (ii) pay for such Costs next incurred in the amount of such deficiency so that the amount of the Loan which remains to be disbursed shall be sufficient to pay for the then remaining Costs (after Borrower makes such payment), and Borrower shall furnish Lender with such evidence thereof as Lender shall require. Borrower hereby agrees that Lender automatically, and without further documentation, shall have a lien on and security interest in any sums deposited pursuant to clause (i) above and that Borrower shall have no right to withdraw any such sums except for the payment of the aforesaid Costs as approved by Lender. Any such sums not used as provided in said clause (i) shall be released to Borrower when and to the extent that Lender determines that the amount thereof is more than the excess, if any, of the total remaining Costs over the undisbursed balance of the Loan, provided, however, that should an Event of Default occur under the Project Mortgage, Lender may, at its option, apply such amounts either to the Costs or to the immediate reduction of outstanding principal and/or interest under the Project Note or any other sum owed by Borrower to Lender.

7. Documents, etc. to be Satisfactory.

All instruments and documents required hereby or affecting the Premises, or relating to Borrower's capacity and authority to borrow the Loan and to execute the Loan Documents and such other documents, instruments, opinions and assurances as Lender may request and all procedures in connection herewith shall be subject to the approval, as to form and substance, of Lender and its counsel, Edwards Angell Palmer & Dodge LLP, 750 Lexington Avenue, New York, New York 10022. All persons or entities responsible for the preparation and/or execution of the instruments specifically required hereby and all obligors thereunder shall be reasonably satisfactory to Lender.

8. Factual Matters.

Any condition of this Agreement which requires the submission of evidence of the existence or non-existence of a specified fact or facts implies as a condition of the existence or non-existence, as the case may be, of such fact or facts and Lender shall, at all times, be free independently to establish to its satisfaction and in its absolute discretion such existence or nonexistence.

9. Waiver.

No failure or delay by Lender in exercising any right or privilege hereunder or under any other instrument contemplated hereby shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.

10. Amendments.

Neither this Agreement nor any provision hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

11. Notices.

Any notices, requests or other communications hereunder shall be in writing and shall be deemed given on the date of delivery when presented either personally against signed receipt, or sent by Federal Express, or three (3) Business Days after being sent by United States Registered or Certified Mail, return receipt requested, postage prepaid, if to Borrower, addressed to it at its office stated above, Attention: Joseph Norton, with a copy sent in the same manner to, Goldstein Hall, PLLC, 44 Wall Street, New York, New York 10005, Attention: Matthew Hall, Esq. and if to Lender, addressed to it at its office stated above, Attention: Lawrence G. Hammond, Vice President, with a copy sent in the same manner to its counsel, Edwards Angell Palmer & Dodge LLP, 750 Lexington Avenue, New York, New York 10022, Kevin C. George, Esq., or to such other address within the United States of America as any such party shall, by notice to the other party, specify.

12. Successors.

This Agreement shall bind and inure to the benefit of the parties hereto, and their respective successors and assigns.

13. Lender's Obligation.

All conditions to the obligation of Lender to make advances hereunder are imposed solely and exclusively for the benefit of Lender and its successors and/or assigns and no other person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that Lender will refuse to make advances in the absence of strict compliance with any or all thereof and no other person shall, under any circumstances, be deemed to be beneficiary of such conditions, any or all of which may be freely waived in whole or in part by Lender at any time if in its sole discretion it deems it advisable to do so.

14. Brokers.

Borrower shall indemnify Lender from claims of those brokers who have had any communication with Borrower and whose claims arise by reason of the indemnifying party's actions in connection with the execution of this Agreement, or any other Loan Document or the consummation of the transactions contemplated hereby, and from expenses incurred by the Lender in connection with any such claims (including, but not limited to, reasonable attorneys' fees and appellate attorneys' fees).

15. Loan Participation.

Lender shall have the unrestricted right at any time and from time to time, and without the consent of or notice to Borrower or any Guarantor, to grant to one or more banks or other financial institutions (each, a "**Participant**") participating interests in Lender's obligation to lend hereunder and/or any or all of the Loan held by Lender hereunder. In the event of any such grant

by Lender of a participating interest to a Participant, whether or not upon notice to Borrower, Lender shall remain responsible for the performance of its obligations hereunder and Borrower shall continue to deal solely and directly with Lender in connection with Lender's rights and obligations hereunder. Lender may furnish any information concerning Borrower, Guarantor, the Loan, the Improvements and/or the Premises, in its possession from time to time to prospective Participants.

16. <u>Counterparts.</u>

This Agreement may be executed in any number of counterparts, and each such counterpart shall for all purposes be deemed to be an original, and all such counterparts together constitute but one and the same agreement.

17. <u>Right of Setoff.</u>

Borrower hereby grants to Lender, a continuing lien, security interest and right of setoff as security for all liabilities and obligations to Lender whether now existing or hereafter arising, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Lender or any entity under the control of, controlled by or affiliated with Lender and its successors and/or assigns or in transit to any of them. At any time, without demand or notice (any such notice being expressly waived by Borrower), Lender may setoff the same or any part thereof and apply the same to any liability or obligation of Borrower or any Guarantor even though unmatured and regardless of the adequacy of any other collateral security for the Loan. **ANY AND ALL RIGHTS TO REQUIRE LENDER TO EXERCISE ITS RIGHTS OR REMEDIES WITH RESPECT TO ANY OTHER COLLATERAL WHICH SECURES THE LOAN, PRIOR TO EXERCISING ITS RIGHT OF SETOFF WITH RESPECT TO SUCH DEPOSITS, CREDITS OR OTHER PROPERTY OF THE BORROWER OR ANY GUARANTOR, ARE HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVED.**

18. <u>Waiver of Jury Trial.</u>

**BORROWER AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF LENDER RELATING TO THE ADMINISTRATION OF THE LOAN OR ENFORCEMENT OF THE LOAN DOCUMENTS EVIDENCING AND/OR SECURING THE LOAN, AND AGREE THAT NO PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, BORROWER HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER**

CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR LENDER TO ACCEPT THIS AGREEMENT AND MAKE THE LOAN.

19. Loan Assignment.

Lender shall have the unrestricted right at any time or from time to time, and without Borrower's or anyone else's consent, to assign all or any portion of its rights and obligations hereunder to one or more banks or other financial institutions (each, an "**Assignee**"), and Borrower agrees that it shall execute or cause to be executed, such documents, including without limitation, amendments to this Agreement and to any other documents, instruments and agreements executed in connection herewith as Lender shall deem necessary to effect the foregoing. In addition, at the request of Lender and any such Assignee, Borrower shall issue one or more new promissory notes, as applicable, to any such Assignee, and if Lender has retained any of its rights and obligations hereunder following such assignment, to Lender, which new promissory notes shall be issued in replacement of, but not in discharge of, the liability evidenced by the promissory note held by Lender prior to such assignment and shall reflect the amount of the respective commitments and loans held by such Assignee and Lender after giving effect to such assignment. Upon the execution and delivery of appropriate assignment documentation, amendments and any other documentation required by Lender in connection with such assignment, and the payment by Assignee of the purchase price agreed to by Lender and such Assignee, such Assignee shall be a party to this Agreement and shall have all of the rights and obligations of Lender hereunder (and under any and all other guaranties, documents, instruments and agreements executed in connection herewith) to the extent that such rights and obligations have been assigned by Lender pursuant to the assignment documentation between Lender and such Assignee, and Lender shall be released from its obligations hereunder and thereunder to a corresponding extent. Lender may furnish any information concerning Borrower in its possession from time to time to prospective Assignees, provided that Lender shall require any such prospective Assignees to agree in writing to maintain the confidentiality of such information.

20. Choice Of Law.

BORROWER AGREES THAT ANY SUIT FOR THE ENFORCEMENT OF THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS MAY BE BROUGHT IN THE COURTS OF THE STATE OF NEW YORK OR ANY FEDERAL COURT SITTING THEREIN AND CONSENTS TO THE NONEXCLUSIVE JURISDICTION OF SUCH COURT. BORROWER HEREBY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT OR ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT FORUM.

21. Governing Law; Jurisdiction.

This Agreement and the rights and obligations of the parties hereunder shall in all respects be governed by, and construed and enforced in accordance with, the laws of the State of New York (without giving effect to New York's principles of conflicts of law). Borrower hereby irrevocably submits to the non-exclusive jurisdiction of any New York State or Federal court

- 7 -

NYC 302018.1

sitting in the City of New York (or any county in New York State where any portion of the "Mortgaged Property," as such noted term is defined in the Mortgage, is located) over any suit, action or proceeding arising out of or relating to this Agreement, and Borrower hereby agrees and consents that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any New York State or Federal court sitting in the City of New York (or such other county in New York State) may be made by certified or registered mail, return receipt requested, directed to Borrower at the address for Borrower set forth in this Agreement, and service so made shall be completed five (5) days after the same shall have been so mailed.

22. <u>Exit Fee.</u> If Borrower does not elect to have Lender provide the Lender's Permanent Loan, then Borrower shall pay to Lender a fee equal to one percent (1%) of the maximum principal amount of the Loan (whether or not it is fully advanced) prior to release of the Project Mortgage.

[THE BALANCE OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, Lender, Borrower and Nominee have caused this Agreement to be executed the day and year first above written.

          **RIVERROCK NEHEMIAH REALTY LLC,**
          a New York limited liability company

          By:    Guytech Management Services, Inc.

          By: _____
              Joseph Norton
              President

          **BANCO POPULAR NORTH AMERICA**

          By: _____
              Lawrence G. Hammond
              Vice President